682 S.E.2d 898

**The STATE, Respondent,**

v.

**Lemond Corneilus HOLLAND, Appellant.**

**No. 4609.**

Court of Appeals of South Carolina.

Heard June 9, 2009.

Decided Aug. 18, 2009.

Rehearing Denied Sept. 17, 2009.

160

Deputy Chief Appellate Defender for Capital Appeals Robert M. Dudek, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Alphonso Simon, Jr., Office of the Attorney General, of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

GEATHERS J.

Lemond Holland (Holland) seeks review of his convictions for murder, assault and battery with intent to kill, and posses-

sion of a weapon during the commission of a violent crime. Holland challenges the trial court's admission of testimony about his possession of a handgun prior to the incident and the trial court's failure to charge the jury on voluntary manslaughter. We affirm Holland's convictions.

## FACTS/PROCEDURAL HISTORY

Shortly after midnight on December 30, 2005, Brandt Koehler (Koehler) and his girlfriend, Yessica Caruthers (Caruthers), went to McCatz Tavern and Bar in North Myrtle Beach. The two socialized and bought drinks at the bar. Before leaving the bar, Koehler became involved in a verbal altercation with Holland. None of the eyewitnesses could determine the subject of the argument, but they all confirmed that there was no physical contact between the two men. After the argument dissipated, Koehler and Caruthers left the bar through the south exit. Jeffrey Bennick (Bennick), the bar's manager and bartender, witnessed Holland watching Koehler and Caruthers exit. Holland then exited the bar through the north door. Bennick and Raphael Walke (Walke) followed Koehler and Caruthers to try to prevent another altercation in the parking lot. Bennick testified that Koehler took off his shirt while facing Bennick and Walke, as if preparing for an altercation. Bennick assured Koehler that nothing was going on and told him to get into his car. Koehler and Caruthers then proceeded to get into Caruthers' car.

Holland's friend, Carlos Adams (Adams), realized that Holland was still agitated over his verbal altercation with Koehler, and, therefore, Adams followed Holland out of the bar's north door in an attempt to calm him down and determine what was happening. According to Adams, Holland went to his car, reached inside, and then locked the door. He then ran toward the passenger side of Caruthers' car, where Koehler was sitting. At this point, Caruthers was attempting to drive out of the parking lot. Holland began banging on the car's passenger side window and pulling on the passenger door. Caruthers testified that Holland was pointing a gun at Koehler through the window. Bennick never saw a gun, but he testified that the banging on the window sounded like metal hitting glass. Adams testified that while he did not see Holland pull anything out of his car that night, a few weeks

earlier Holland had shown him a semi-automatic gun that he had in his car.

Caruthers got out of her car and went around to the passenger side of the car, yelling for Holland to stop hitting her car. Holland continued to pull on the passenger door. Both Caruthers and Walke tried to pull Holland away from the car, but they were unsuccessful. Bennick then saw the passenger door open, but he was unsure whether Holland was able to pull the door open or whether Koehler opened the door himself. Holland and Koehler then grabbed each other and locked arms, moving about fifteen to twenty feet away from Caruthers' car. According to Bennick, Koehler had his head down at this time, while it appeared that Holland was hitting Koehler over the head. Then, three shots were fired. After the third shot, Koehler fell to the ground. Holland then ran to his car and drove away. Koehler received a gunshot wound to the head that led to his death, and Walke received a gunshot wound to his leg. Holland was charged with murder, possession of a weapon during the commission of a violent crime, and assault and battery with intent to kill (ABIK).

Crime scene investigators found two shell casings at the scene. South Carolina State Law Enforcement Division (SLED) agent David Black determined the shell casings to be 9 mm Luger caliber cartridge casings. Agent Black also determined that the same gun fired the two casings. Also, the fatal bullet retrieved from Koehler's head was consistent with 9 mm Luger caliber bullets.

At trial, defense counsel objected to the State's questioning of Adams about his observation of a weapon in Holland's possession weeks prior to the incident. Counsel initially argued that the testimony was not relevant, and the trial court overruled the objection. After a break in the trial, defense counsel asserted that he was making his objection pursuant to Rule 403, SCRE, on the ground the testimony's prejudicial effect outweighed its probative value. The trial court allowed Adams to answer the question, and Adams testified that a few weeks prior to the incident, Holland had shown him a semi-automatic gun that he kept in his car.

The trial court also denied counsel's request for a jury charge on voluntary manslaughter on the ground there was no

evidence of sufficient legal provocation.[1] The jury returned a verdict of guilty for all three charges against Holland, and the trial court denied all of Holland's post-trial motions. The trial court sentenced Holland to fifty years of imprisonment for the murder conviction, twenty years for the ABIK conviction, concurrent, and five years for possession of a weapon during the commission of a violent crime, to run consecutively to the other sentences. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in refusing the charge the jury on voluntary manslaughter?
2. Did the trial court err in allowing Adams to testify about his observation of a weapon in Holland's possession prior to the incident?

## STANDARD OF REVIEW

The conduct of a criminal trial is left largely to the discretion of the trial court, and this Court will not interfere unless the rights of the appellant were prejudiced. *State v. Bridges,* 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982). Therefore, this Court reviews errors of law only and is bound by the trial court's factual determinations unless they are clearly erroneous. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

## LAW/ANALYSIS

*I. Charge on Voluntary Manslaughter*

█ Holland asserts that the trial court erred in refusing to charge the jury on voluntary manslaughter because the evidence showed he acted in a sudden heat of passion upon sufficient legal provocation. We disagree.

█ "The law to be charged must be determined from the evidence presented at trial." *Cole,* 338 S.C. at 101, 525 S.E.2d at 512. In determining whether the evidence requires

---

1. "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 513 (2000).

a charge of voluntary manslaughter, the Court views the facts in a light most favorable to the defendant. *State v. Byrd,* 323 S.C. 319, 321, 474 S.E.2d 430, 431 (1996). However, "[a]n instruction should not be given unless justified by the evidence." *State v. Moultrie,* 273 S.C. 532, 534, 257 S.E.2d 730, 731 (1979). "If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury." *State v. Blurton,* 352 S.C. 203, 208, 573 S.E.2d 802, 804 (2002). This Court will not reverse the trial court's ruling regarding jury instructions unless the trial court abused its discretion. *State v. Williams,* 367 S.C. 192, 195, 624 S.E.2d 443, 445 (Ct.App.2005).

> Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. Both heat of passion and sufficient legal provocation must be present at the time of the killing.

*Cole,* 338 S.C. at 101, 525 S.E.2d at 513 (internal citations omitted).

> "The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence."

*Id.* at 101–02, 525 S.E.2d at 513 (quoting *State v. Byrd,* 323 S.C. 319, 474 S.E.2d 430 (1996)).

█ "[M]ere words, no matter how opprobrious, are insufficient to constitute adequate legal provocation when death is caused by the use of a deadly weapon." *State v. Rogers,* 320 S.C. 520, 525, 466 S.E.2d 360, 362 (1996). Further, merely displaying a willingness to fight, unaccompanied by any overt threatening act toward a defendant, does not constitute sufficient legal provocation. *See State v. Johnson,* 324 S.C. 38, 40–41, 476 S.E.2d 681, 682 (1996) (holding that the trial judge properly refused to charge voluntary manslaughter despite testimony that individuals approached the defendant as they

were "trash talking" and that one of the individuals removed his hat and "stepped out a little bit," demonstrating a willingness to fight, because there was no evidence that anyone made an overt threatening act toward the defendant).

Moreover, "[t]he exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence." *State v. Ivey*, 325 S.C. 137, 142, 481 S.E.2d 125, 127 (1997). "A victim's attempts to resist or defend himself from a crime cannot satisfy the sufficient legal provocation element of voluntary manslaughter." *State v. Shuler*, 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001).

Here, there is no evidence, nor any reasonable inferences from the evidence, that at the exact moment Holland killed Koehler, Holland's rage was justified by *legal* provocation. The rage experienced by Holland when he fired the fatal shot had already been continuously sustained from the moment of his initial fury during the verbal argument inside the bar. Although the argument ended inside the bar, Holland's fury never subsided as he relentlessly pursued a retreating Koehler. Holland saw Koehler and Caruthers leaving through the bar's south exit, and he immediately stepped outside through the north exit and went directly to his car to retrieve his gun. He then ran toward the passenger side of Caruthers' car where Koehler was sitting as Caruthers was trying to drive out of the parking lot. Holland banged on the car's passenger side window, pointed a gun at Koehler, and repeatedly yanked on the passenger door to get to Koehler. Holland also rebuffed attempts by Caruthers and Walke to stop him from pursuing Koehler.

At this point, Bennick saw the passenger door open, but he was unsure whether Holland was finally able to open the door or whether Koehler himself opened the door. However, even if Koehler opened the door, that act could not be considered sufficient legal provocation because it was obvious that Holland wanted to get Koehler out of the vehicle; Holland, who was already furious and was armed, was on a mission to inflict harm. Further, the witnesses' vague characterizations of the physical contact between Holland and Koehler as "tussling" and "wrestling" does not permit an inference that Koehler

threw any punches or otherwise posed a genuine threat to Holland through any specific, identifiable hostile act. There was absolutely no evidence that Koehler did anything to pose a genuine threat to the armed and determined Holland.

Holland argues that the following evidence showed sufficient legal provocation: (1) the argument inside the bar; (2) Koehler taking off his shirt in the bar's parking lot; (3) the altercation between Holland and Caruthers; and (4) "wrestling" between Holland and Koehler when the gunshots were fired. We disagree.

First, the argument inside the bar was not accompanied by any physical contact between Koehler and Holland or any threatening gestures by Koehler. Therefore, the argument itself could not serve as sufficient legal provocation because "mere words, no matter how opprobrious, are insufficient to constitute adequate legal provocation when death is caused by the use of a deadly weapon." *Rogers,* 320 S.C. at 525, 466 S.E.2d at 362. When "death is caused by use of a deadly weapon, the offending words must be accompanied by an overt, threatening act." *Id.* at 525, 466 S.E.2d at 362–63 (quoting *State v. Lowry,* 315 S.C. 396, 399, 434 S.E.2d 272, 274 (1993) (internal quotations omitted)).

Further, there is no evidence, nor any reasonable inferences from the evidence, that Holland saw Koehler remove his shirt in the parking lot. Even if Holland had seen Koehler remove his shirt, and even if this was a signal that Koehler was ready for a fight, merely displaying a willingness to fight, unaccompanied by any overt threatening act toward a defendant, does not constitute sufficient legal provocation. *See Johnson,* 324 S.C. at 40–41, 476 S.E.2d at 682 (holding that the trial judge properly refused to charge voluntary manslaughter, despite testimony that an individual approached the defendant and demonstrated a willingness to fight, because there was no evidence of any overt threatening act toward the defendant).

Moreover, evidence of the confrontation between Caruthers and Holland could not support a voluntary manslaughter charge because there is no evidence that she posed a threat to Holland either by possessing a weapon or through hostile

acts.[2] Her attempt to pull Holland away from her car as he was trying to open the passenger door to get to Koehler was justified and, therefore, did not rise to the level of *legal* provocation. *See Ivey,* 325 S.C. at 142, 481 S.E.2d at 127 ("The exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence.").

Additionally, the "wrestling," as described by one of the witnesses, between Holland and Koehler was initiated by Holland and showed nothing more than Koehler's attempt to defend himself from Holland's aggression. "The exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence." *Ivey,* 325 S.C. at 142, 481 S.E.2d at 127. "A victim's attempts to resist or defend himself from a crime cannot satisfy the sufficient legal provocation element of voluntary manslaughter." *Shuler,* 344 S.C. at 632, 545 S.E.2d at 819; *see also State v. Tyson,* 283 S.C. 375, 379, 323 S.E.2d 770, 772 (1984) (holding that the trial court properly refused to charge the jury on voluntary manslaughter because evidence of a struggle as the victim resisted an armed robbery showed that the victim was defending himself).

During oral arguments, Holland's counsel insisted that the instant case is a classic case of voluntary manslaughter. In support of his argument, he discussed the following cases: *State v. Knoten,* 347 S.C. 296, 555 S.E.2d 391 (2001); *State v. Lowry,* 315 S.C. 396, 434 S.E.2d 272 (1993); *Carter v. State,* 301 S.C. 396, 392 S.E.2d 184 (1990), *overruled on other grounds by Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614 (1999); and *State v. Gilliam,* 296 S.C. 395, 373 S.E.2d 596 (1988). The instant case is clearly distinguishable from these cases.

In *Knoten,* one of the defendant's statements given to police indicated that the victim cut the defendant with a knife and chased him out of her apartment into the frigid weather while he was naked and that he reached into his trunk to obtain a

---

**2.** *Cf. State v. Wharton,* 381 S.C. 209, 214–15, 672 S.E.2d 786, 788–89 (2009) (holding that there was no evidence of sufficient legal provocation on the part of an individual who argued with the defendant because he did not pose a threat to the defendant either by possessing a weapon or through hostile acts).

metal pipe, presumably to defend himself as he went back into the apartment to retrieve his clothes. 347 S.C. at 303–04, 555 S.E.2d at 395. As he entered the apartment, the victim cut him with a knife a second time, and the defendant then hit the victim on the head with the metal pipe. 347 S.C. at 304–05, 555 S.E.2d at 395–96. Unlike the evidence of the victim's second assault of the defendant in *Knoten*, there is simply no evidence in the instant case that any action of Koehler after he retreated from the bar precipitated a new provocation rising to the level of "legal provocation," sufficiently distinct from any provocation Holland had already experienced inside the bar.

The facts in the instant case are also different from those in *Lowry*, in which there was testimony that the victim moved toward the defendant in a menacing fashion with his arms and hands outstretched toward the defendant as if to grab him. 315 S.C. at 398, 434 S.E.2d at 273. The *Lowry* Court stated that this testimony tended to show that the victim was about to **initiate** a physical encounter when the shooting occurred. 315 S.C. at 399, 434 S.E.2d at 274. There was no testimony in the instant case that could be similarly characterized.

In *Carter*, the defendant's heat of passion was provoked by the victim's striking the defendant and forcefully ejecting him from the victim's house. 301 S.C. at 397, 392 S.E.2d at 185. And in *Gilliam*, the defendant's heat of passion was provoked by the victim's firing a gun at the defendant. 296 S.C. at 397, 373 S.E.2d at 597. Here, Holland's rage was provoked by a mere verbal argument inside a bar, which does not rise to the level of legal provocation. Again, there is no **reasonable** inference of a specific, identifiable hostile act of Koehler that posed a genuine threat to Holland. The requirement that we view the evidence in the light most favorable to the defendant does not allow us to throw out all reason from our analysis or to ignore the overwhelming, clear evidence of Holland's mission of violence against Koehler-a state of mind that began before Koehler even stepped out of Caruthers' vehicle. *Cf. Collins v. Bisson Moving & Storage, Inc.*, 332 S.C. 290, 296, 504 S.E.2d 347, 350 (Ct.App.1998) ("In reviewing the grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party.").

In sum, the trial court could have determined that based on the lack of evidence of any genuine threat posed by Koehler, a charge on voluntary manslaughter would have confused the jury. Therefore, the trial court properly declined to give this charge. *See Blurton,* 352 S.C. at 208, 573 S.E.2d at 804 ("If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury."); *Ivey,* 325 S.C. at 142, 481 S.E.2d at 127 (holding that where no actions by the victim constitute legal provocation, a charge on voluntary manslaughter is not required). We find no abuse of discretion. Therefore, we are unable to reverse on this ground. *See Williams,* 367 S.C. at 195, 624 S.E.2d at 445 (holding that this Court will not reverse a ruling on a jury instruction unless the trial court abused its discretion).

## II. *Testimony concerning handgun*

■ Holland argues that the trial court erred in allowing Adams to testify about his observation of a weapon in Holland's possession prior to the incident because the danger of the testimony's undue prejudicial effect outweighed its probative value. We disagree.

Rule 403, SCRE, states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

"Unfair prejudice means an undue tendency to suggest [a] decision on an improper basis." *State v. Gilchrist,* 329 S.C. 621, 627, 496 S.E.2d 424, 427 (Ct.App.1998). The determination of whether the danger of unfair prejudice outweighs the probative value of evidence must be based on the entire record and will turn on the facts of each case. *State v. Lyles,* 379 S.C. 328, 338, 665 S.E.2d 201, 206 (Ct.App.2008).

This Court reviews a trial court's decision regarding the admissibility of evidence under Rule 403 pursuant to the abuse of discretion standard and must give great deference to the trial court's judgment. *State v. Hamilton,* 344 S.C. 344, 358,

543 S.E.2d 586, 593 (Ct.App.2001), *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005). "A trial [court's] balancing decision under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise due to a differing view of the highly subjective factors of the probative value or the prejudice presented by the evidence." *Id.* at 358, 543 S.E.2d at 593–94. The trial court's determination should be reversed only in exceptional circumstances. *Id.* at 357, 543 S.E.2d at 593.

Here, Adams' testimony concerning Holland's storage of a semiautomatic gun in his car within weeks prior to the incident was consistent with the ballistic evidence gathered by investigators after the shooting. Further, it solidified Caruthers' identification of Holland as the person who possessed the weapon used to kill Koehler and injure Walke. Therefore, Adams' testimony was indispensable in proving the elements of all three charges against Holland—possession of a weapon during the commission of a violent crime, murder, and ABIK. The trial court acted within its discretion in determining that the probative value of Adams' testimony outweighed any danger that the jury might base its decision on improper considerations. *See State v. Braxton,* 343 S.C. 629, 634, 541 S.E.2d 833, 836 (2001) (holding that the probative value of a witness' testimony that he knew the defendant possessed a nine millimeter pistol, which tended to identify the defendant as the possessor of the murder weapon, outweighed any prejudice because the identity of the user of the murder weapon was the critical issue at trial).

 Holland also argues that Adams' testimony was unduly prejudicial because it was evidence of a prior bad act, showing Holland as a person of bad character. However, he did not raise this specific ground before the trial court. Therefore, this specific argument is not preserved for this Court's review. *See State v. Bailey,* 298 S.C. 1, 5–6, 377 S.E.2d 581, 584 (1989) (holding that an issue is not preserved for review when a party argues one ground in the trial and then an alternative ground on appeal).

 In any event, there is nothing in Adams' testimony concerning the handgun from which the jury could infer a prior bad act on Holland's part. The testimony did not indicate that Holland's mere possession of the handgun was illegal, that Holland had used the gun to commit any bad acts prior to the incident, or that Holland had a criminal record involving weapon-related offenses. Notably, during oral arguments, Holland's counsel conceded that there was no negative inference that could be drawn from the mere possession of a weapon unaccompanied by any other act.

Further, even if a prior bad act could be inferred from the testimony, this evidence solidified Caruthers' identification of Holland as the person who possessed the weapon used to kill Koehler and injure Walke. The probative value of this identification evidence outweighed any prejudicial effect. Hence, it was admissible under both Rule 403 and Rule 404(b), SCRE, which provides that evidence of other crimes, wrongs, or acts may be admissible to show identity.[3] Therefore, Adams' testimony did not constitute improper character evidence. *Cf. State v. Dickerson*, 341 S.C. 391, 396–97, 535 S.E.2d 119, 121–22 (2000) (holding that a murder defendant's drug use was admissible because the medical examiner's testimony connected it to the violent "overkill" nature of the murder, which involved multiple stab wounds, and thus it served to identify the defendant as the "overkill" murderer).

## CONCLUSION

Accordingly, Holland's conviction is

**AFFIRMED.**

HUFF and PIEPER, JJ., concur.

---

**3.** Rule 404(b), SCRE, states, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."