THOMAS, J.:
*510 **53 Appellant Johnnie Lee Lawson appeals his conviction for breaking into a motor vehicle, arguing the trial court erred by (1) admitting evidence of his prior criminal record, (2) refusing to give a limiting instruction to the jury regarding the evidence of his prior criminal record, and (3) admitting a witness for the State as an expert in fingerprint analysis. We reverse.
FACTS/PROCEDURAL HISTORY
In April 2015, a grand jury indicted Appellant for breaking into a motor vehicle in violation of section 16-13-160(A)(1) of the South Carolina Code (2015). The State called Appellant's case for trial in November 2015 and began by calling Jessica Wilbanks, the alleged victim, to testify.
Wilbanks testified she was in the process of moving, with her husband and a teenager who lived with them, from Barnwell County to Lexington County in March 2014. Wilbanks asserted they were in Lexington for the weekend preparing their new house and moving in some household items. According to Wilbanks, they parked their car on the street in front of the house while they were moving items into the house from a moving truck. Wilbanks testified she went outside around 10:30 p.m. and heard a noise. As she walked around the moving truck, she noticed someone standing over her car. Wilbanks described the person as an adult, black male who was "[t]aller than [her]" and wearing a "dark hoodie sweatshirt and either very dark blue jeans or, or black jeans." Wilbanks alleged she heard a metal scraping noise when she **54 saw the man near her car. She admitted she did not see his face during the encounter. Wilbanks testified the man ran away once he saw her. Following the encounter, Wilbanks returned to the house to notify her husband, and they called 911.
Following Wilbanks's testimony and outside the presence of the jury, Appellant brought up "one other matter" to the trial court. Appellant explained State's Exhibit 16 was a "ten-print fingerprint card" and he had "an issue with the hearsay of what he was arrested for on the back." Appellant acknowledged the State had an employee from the South Carolina Law Enforcement Division (SLED) to authenticate the card, but he agreed to stipulate to authenticity. The trial court agreed the prior criminal history was inadmissible and instructed the State to redact that information. With regard to Appellant's offer to stipulate, the trial court explained the State was not required to accept the stipulation. Appellant noted he had no objection as long as "his prior arrests are not there."
Sergeant Jason Merrill testified he responded to the scene on the night of the incident and, when inspecting one of the car windows, found "approximately three fingerprints on the inside of the glass." Merrill asserted he collected the fingerprints and submitted them for latent print examination. Subsequently, Merrill received a report from the examiner alleging the fingerprints from the scene matched Appellant's fingerprints.
Next, the State called Seraphim Haftoglou who was the supervisor at SLED for the Automated Fingerprint Identification System (AFIS). Haftoglou testified AFIS is an automated database where SLED stores all fingerprints in a statewide system. Haftoglou explained the fingerprints in AFIS come "mainly" from arrests because detention centers throughout the state "capture the person's demographics and fingerprints and submit it to us through SLED pretty immediately." He noted AFIS allows SLED to have an up to date criminal history on the individual. Haftoglou then clarified that AFIS also contains fingerprints from individuals submitted by various entities for background checks. Haftoglou testified he printed and certified State's Exhibit 16, which was a ten-print **55 fingerprint card, for the trial. The State requested to admit the ten-print card, and Appellant objected "to what we said previously." *511 The trial court noted the objection and admitted the exhibit. Haftoglou then identified the ten-print card as belonging to Appellant. Haftoglou testified the ten-print card indicated Appellant's fingerprints were collected in July 2003 at the "Department of Corrections, Kirkland Correctional Institute" (Kirkland). Appellant objected and asked for the jury to be excused.
Appellant explained he objected to referencing the ten-print card's connection to Kirkland. Appellant claimed his understanding of the earlier discussion of the ten-print card included redacting that the fingerprints were collected at Kirkland. He asserted the reference to Kirkland indicated to the jury he had been arrested prior to this incident and again offered to stipulate to the authenticity of the ten-print card. The trial court noted the State was not required to accept a stipulation and, in the absence of an accepted stipulation, must authenticate the fingerprints. The trial court contended Appellant's prior criminal history had not come into evidence despite the reference to Kirkland. Appellant alleged the State's motive for rejecting the stipulation was to allow the jury to hear he had a prior criminal history. The trial court explained the State's motive was irrelevant to its decision. When the jury returned, Haftoglou repeated that Appellant's ten-print card originated at Kirkland in July 2003.
Subsequently, the State called James Hickman. Hickman testified he was the AFIS operator and a latent fingerprint examiner. Following voir dire, the trial court excused the jury, and Appellant objected to qualifying Hickman as an expert. The trial court disagreed with Appellant and admitted Hickman as an expert in fingerprint examination. Hickman then testified the fingerprints collected from the scene by Sergeant Merrill matched the fingerprints in AFIS belonging to Appellant.
At the conclusion of the trial, the jury found Appellant guilty of breaking into a motor vehicle. After the State recited Appellant's lengthy criminal record, which included many instances of theft, the trial court sentenced him to the statutory maximum of five years' imprisonment. This appeal followed.
**56 ISSUES ON APPEAL
1. Did the trial court err by allowing the State to elicit testimony showing Appellant's ten-print card originated at Kirkland in July 2003?
2. Did the trial court err by refusing Appellant's proposed jury instruction regarding prior bad acts?
3. Did the trial court err by admitting Hickman as an expert in fingerprint examination and finding he met the threshold for admission on qualifications and reliability?
DISCUSSION
Appellant argues the trial court erred by allowing the State to elicit testimony showing his ten-print card originated from Kirkland in July 2003 because it indicated to the jury he had a prior criminal record. Appellant claims the testimony was evidence of a prior bad act, which violated Rule 404, SCRE. Appellant also argues the trial court erred by finding the evidence of his prior criminal record was required to allow the State to meet its burden of authenticating the fingerprints.
The State claims this issue is unpreserved because Appellant consented to admitting this evidence in a pretrial hearing. On the merits, the State argues the trial court properly allowed the evidence to confirm Appellant's prints were obtained at Kirkland because the State was required to authenticate the prints and was not required to accept Appellant's "vague stipulation." Further, the State asserts Appellant was not prejudiced by the reference to Kirkland and any error was harmless because the existence of a prior criminal record could not have impacted the jury's verdict.
Initially, we disagree with the State's argument that Appellant's argument is unpreserved. The colloquy following Wilbanks's testimony regarding the prior criminal record evidence was somewhat vague. Appellant's concession to admit the ten-print card, as long as "his prior arrests [were] not there," could be construed as including any reference to Kirkland. Due to the lack of specificity regarding references to Kirkland during the initial colloquy, we find Appellant *512 did not consent to admitting Haftoglou's reference to Kirkland. Furthermore, when the State elicited the testimony, Appellant immediately objected and raised this issue, and the trial court **57 ruled on it. Thus, because Appellant raised the argument and received a ruling on it, the argument is preserved. See State v. Stahlnecker , 386 S.C. 609, 617, 690 S.E.2d 565, 570 (2010) (explaining a party need only raise an issue and receive a ruling on it for it to be preserved).
On the merits, we find the trial court abused its discretion by admitting testimony referencing Kirkland and July 2003 on the ten-print card because the reference indicated to the jury that Appellant had a prior criminal record and the reference was unnecessary to authenticate the fingerprints. "In reviewing a trial court's ruling on the admissibility of evidence, appellate courts recognize that the trial [court] has considerable latitude in this regard and will not disturb such rulings absent a prejudicial abuse of discretion." State v. Scott , 405 S.C. 489, 497, 748 S.E.2d 236, 241 (Ct. App. 2013). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." Id . (quoting State v. Whitner , 399 S.C. 547, 557, 732 S.E.2d 861, 866 (2012) ).
"In a criminal case, the State cannot attack the character of the defendant unless the defendant himself first places his character in issue." State v. King , 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999). "Further, evidence of prior bad acts is inadmissible to show criminal propensity or to demonstrate the accused is a bad person." Id ."Evidence of other crimes must be put to a rather severe test before admission." State v. Timmons , 327 S.C. 48, 52, 488 S.E.2d 323, 325 (1997).
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE. Our appellate courts have addressed in multiple opinions a defendant's claim that evidence introduced at trial implied he had a criminal record and thus was admitted in violation of Rule 404(b). In a case involving fingerprints, a SLED crime scene processor testified he compared and matched the suspect's fingerprints to those on a card he obtained from "SLED records." State v. Council , 335 S.C. 1, 11-12, 515 S.E.2d 508, 513 (1999). The appellant argued the **58 testimony was inadmissible because it implied to the jury that he had a prior criminal record. Id . at 12, 515 S.E.2d at 513. Our supreme court disagreed and found it was "questionable whether the jury even understood the implication" of the testimony. Id . at 13, 515 S.E.2d at 514. The court further distinguished the testimony from the evidence in State v. Tate[1] by pointing out the reference to SLED records did not indicate to the jury when SLED obtained the fingerprints. Id . at 13 n.7, 515 S.E.2d at 514 n.7.
However, in Tate , the State introduced a photographic lineup, which included a mug shot of the appellant. 288 S.C. at 105, 341 S.E.2d at 381. The mug shot included "a small board with the date 11-20-82 and the words 'SPTBG. CO. SHERIFF' [ ] hanging around [the] appellant's neck." Id . Under these circumstances, our supreme court found "the markings on the photographs, particularly the date, which was almost one year prior to the trial of this case, would clearly infer to the jury that [the] appellant had a prior criminal record." Id . at 106, 341 S.E.2d at 381. The court reversed and remanded for a new trial. Id .
More recently, in State v. Stephens , the appellant argued the State's use of his "mug shot" in a photographic lineup implied he had a prior criminal record.[2]
*513 398 S.C. 314, 321, 728 S.E.2d 68, 72 (Ct. App. 2012). This Court disagreed with the notion that the photograph implied he had a criminal record because the photographs in the lineup showed only each person's "head and neck against a blank background." Id . at 322, 728 S.E.2d at 72. This Court explained, although the photograph was a mug shot, there was nothing in the photograph to actually imply it was a mug shot, and the "photographs at issue here could have come from driver's licenses, employee identification badges, or other sources." Id . ; see **59 State v. Ford , 334 S.C. 444, 450, 513 S.E.2d 385, 388 (Ct. App. 1999) (finding use of a mug shot in a photographic lineup was not improper character evidence because they were displayed "in such a way as to hide any indication of their origin" and no testimony "reveal[ed] the origin of the photographs").
In State v. Holland , a jury convicted the appellant of murder and other crimes after he shot another man. 385 S.C. 159, 164-65, 682 S.E.2d 898, 900-01 (Ct. App. 2009). During the trial, a witness testified the appellant showed him a firearm "a few weeks" prior to the incident. Id . at 163-64, 682 S.E.2d at 900. On appeal, the appellant argued admission of this testimony was error because it implied a prior bad act. Id . at 172, 682 S.E.2d at 905. This Court disagreed and found the testimony was not improper character evidence because it "did not indicate that [the appellant]'s mere possession of the handgun was illegal, that [he] had used the gun to commit any bad acts prior to the incident, or that [he] had a criminal record involving weapon-related offenses." Id . at 173, 682 S.E.2d at 905.
In State v. Thompson , a deputy testified he was looking for the appellant in a certain location and referenced the appellant "had warrants." 352 S.C. 552, 560, 575 S.E.2d 77, 82 (Ct. App. 2003). The appellant claimed this testimony was improper because it "constituted improper evidence of prior bad acts." Id . This Court disagreed and found the reference to warrants could reasonably have been a reference to the warrants related to the crimes for which the appellant was on trial, instead of some prior bad act. Id . at 561, 575 S.E.2d at 82.
With regard to authenticating Appellant's ten-print card, the trial court and the State relied upon Anderson as requiring the State to authenticate the ten-print card. In Anderson , the State offered a ten-print card assigned to the appellant and maintained in AFIS. State v. Anderson , 386 S.C. 120, 122, 687 S.E.2d 35, 36 (2009). The appellant argued the authentication requirement "should be strictly construed to require the person who actually took his fingerprints to testify regarding the reliability or authenticity of the ten-print card." Id . at 132, 687 S.E.2d at 41. Our supreme court disagreed with such a strict interpretation and found the State properly authenticated **60 the ten-print card under both the South Carolina Rules of Evidence and case law prior to adoption of the rules. Id . at 128-29, 687 S.E.2d at 39. Specifically, the court found the State properly authenticated the ten-print card under Rule 901(b)(7), SCRE, because the ten-print card was a public report or record. Id . at 130-31, 687 S.E.2d at 40. Also, the State authenticated the ten-print card under Rule 901(b)(9), SCRE, by presenting evidence as to "when and where [the appellant]'s fingerprints were taken; how they were submitted to SLED; the process implemented by law enforcement for taking the fingerprints; and how an accurate record of them was maintained in the AFIS." Id . at 131, 687 S.E.2d at 41. Thus, our supreme court explained alternative ways the State could authenticate ten-print cards maintained in AFIS. Id . at 129-32, 687 S.E.2d at 39-41. The Anderson court also noted it expressed no opinion as to whether the State's method of authentication, which included testimony that the ten-print card originated from a law enforcement agency, constituted prior bad act evidence because the appellant did not raise that issue during trial. Id. at 124 n.2, 687 S.E.2d at 37 n.2.
In this case, the testimony referring to Kirkland and July 2003 on Appellant's ten-print card indicated to the jury that Appellant had a prior criminal record. We find Haftoglou's testimony that Appellant's ten-print card originated from Kirkland in July *514 2003 is most similar to the circumstances in Tate . See Tate , 288 S.C. at 106, 341 S.E.2d at 381 (finding a mug shot of the defendant containing a board that identified the law enforcement agency who took the photograph and the date of the photograph "clearly infer[red] to the jury that [the] appellant had a prior criminal record").
Haftoglou's references to Kirkland indicated to the jury that Appellant had been incarcerated at some point. Also, Haftoglou explained multiple times the ten-print card was collected in July 2003, over ten years prior to the commission of this crime. This temporal clarification excluded any possibility the jury would conclude Appellant's time at Kirkland was related to the crime for which he was on trial. Thus, Haftoglou's references to Kirkland in July 2003 indicated to the jury that Appellant had been incarcerated and, in contrast to Council **61 and Thompson , excluded the possibility that Appellant was incarcerated due to the crime at issue in the trial. See Council , 335 S.C. at 13 n.7, 515 S.E.2d at 514 n.7 (distinguishing Tate by explaining a reference to the State obtaining the defendant's fingerprints from "SLED records" did not indicate to the jury when SLED obtained the fingerprints); Thompson , 352 S.C. at 560-61, 575 S.E.2d at 82 (finding a deputy's testimony that the defendant "had warrants" was not reversible error because the jury could have reasonably concluded the reference to warrants related to the crimes for which the defendant was on trial, instead of some prior criminal record). As a result, we find Haftoglou's references violated Rule 404(b)'s prohibition against admitting evidence of prior crimes, wrongs, or acts, and the trial court abused its discretion by admitting the testimony. See Scott , 405 S.C. at 497, 748 S.E.2d at 241 ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support.").
With regard to the State's claim it was required to elicit the testimony that Appellant's ten-print card originated from Kirkland in July 2003 in order to authenticate the ten-print card, we disagree. First, the State could have, and did, authenticate the ten-print card by other methods that did not involve referencing Kirkland. The State elicited testimony from Haftoglou showing, pursuant to statute, law enforcement takes the fingerprints of every person who is arrested in this state. Haftoglou testified AFIS is where SLED stores and maintains all of the fingerprint records it receives pursuant to arrests and background checks. As our supreme court concluded in Anderson , this testimony alone, without any reference to Kirkland, was sufficient to authenticate Appellant's ten-print card as a public report or record under Rule 901(b)(7). See Anderson , 386 S.C. at 130-31, 687 S.E.2d at 40 (finding the State adequately authenticated a ten-print card under Rule 901(b)(7) by eliciting testimony that law enforcement collects fingerprints from every arrested person in this state and SLED stores and maintains the prints in AFIS). Furthermore, the State could have accepted Appellant's offer to stipulate to the authenticity of the ten-print card. Thus, it was unnecessary **62 for the State to reference Kirkland to authenticate Appellant's ten-print card.
Second, even evidence offered to authenticate other evidence must be admissible under the rules of evidence. If relevant evidence may be excluded under Rule 403, SCRE ; Rule 404(b) ; or other rules of evidence; it is reasonable to require authentication evidence to be admissible under these rules as well. We note this case is distinguishable from our jurisprudence addressing the admissibility of prior convictions when the prior conviction is an actual element of the offense for which the defendant is on trial. Here, Appellant's prior criminal record was not an element of the offense for which he was on trial. Thus, the State's need to admit the controversial testimony in this case was lower than when a prior conviction is an element of the crime.
However, even in cases involving prior convictions as an element of the offense for which the defendant is on trial, our supreme court has explained the evidence showing prior convictions continues to be subject to admissibility under other rules of evidence. See State v. James , 355 S.C. 25, 34, 583 S.E.2d 745, 749-50 (2003) ("[N]one of the relevant authorities nullify the trial [court]'s traditional role in weighing the probative value *515 of evidence versus its prejudicial effect or suggest that Rule 403 is displaced by operation of" a statute making prior criminal convictions an element of a crime); id . at 34, 583 S.E.2d at 750 ("The admissibility of prior convictions is always limited by the traditional rules of evidence."); id . at 35, 583 S.E.2d at 750 ("Although the State is entitled to submit evidence of 'its own choosing,' it must do so within the confines of the established rules of evidence."). As a result, the State may not bootstrap improper character evidence into admissible testimony by simply claiming it is offered to authenticate other evidence. This is especially true when the State can overcome the low threshold of authentication with otherwise admissible evidence such as a stipulation or, as discussed above, under Rule 901(b)(7). See Deep Keel, LLC v. Atl. Private Equity Group, LLC , 413 S.C. 58, 64, 773 S.E.2d 607, 610 (Ct. App. 2015) (noting the burden to authenticate evidence "is not high"). **63 Finally, contrary to the State's assertion, the trial court's error was not harmless. The State's case was circumstantial and relied almost entirely on the fingerprints to connect Appellant to the crime. Under these circumstances, with limited evidence linking the defendant to the crime, the evidence suggesting Appellant had a prior criminal record was prejudicial because it could have influenced the jury's verdict. We find the State failed to conclusively prove Appellant's guilt with competent evidence, such that the jury could not have reached any other rational conclusion. See King , 334 S.C. at 514, 514 S.E.2d at 583 ("Whether the improper introduction of this evidence is harmless requires the Court to determine whether [the] appellant's 'guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached.' " (quoting State v. Parker , 315 S.C. 230, 234, 433 S.E.2d 831, 833 (1993) ) ). Thus, the trial court committed reversible error by admitting the evidence suggesting Appellant had a prior criminal record.[3]
CONCLUSION
Based on the foregoing, the trial court abused its discretion by admitting testimony showing Appellant's ten-print card originated at Kirkland in July 2003 when the reference indicated to the jury Appellant had a prior criminal record. We find the reference was unnecessary to authenticate the fingerprints, and the State may not render improper character evidence admissible by claiming it is needed to authenticate other evidence. Furthermore, the trial court's error was not harmless.
REVERSED.
SHORT and HILL, JJ., concur.

State v. Tate , 288 S.C. 104, 341 S.E.2d 380 (1986).

Generally, admission of a mug shot is reversible error unless the State meets certain conditions including that the photograph does not suggest the defendant has a criminal record. See State v. Traylor , 360 S.C. 74, 84, 600 S.E.2d 523, 528 (2004) (explaining admission of a mug shot is error unless "(1) the [S]tate has a demonstrable need to introduce the photograph, (2) the photograph shown to the jury does not suggest the defendant has a criminal record, and (3) the photograph is not introduced in such a way as to draw attention to its origin or implication").

Because this issue is dispositive of Appellant's remaining issues, we decline to address them. See State v. Corley , 383 S.C. 232, 244-45, 679 S.E.2d 187, 194 (Ct. App. 2009) (explaining an appellate court need not address remaining issues when disposition of a prior issue is dispositive).