662 S.E.2d 461

**The STATE, Respondent,**

v.

**Richard Philyaw ANDERSON, Appellant.**

**No. 4386.**

Court of Appeals of South Carolina.

Submitted May 1, 2008.
Decided May 6, 2008.
Rehearing Denied June 26, 2008.

244

Appellate Defender Lanelle C. Durant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General

Julie M. Thames, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

HUFF, J.

In this criminal action, Richard P. Anderson appeals his conviction for first-degree burglary and sentence of twenty years in prison. Anderson argues the trial court erred in admitting an unauthenticated rolled ten-print card as maintained in the automated fingerprint identification system (AFIS) into evidence. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

On August 15, 2003, Pricilla Ward discovered someone had broken into the home she shared with her husband. The intruder had gained access to the home by breaking a bedroom window. The Wards discovered several items missing from the home, including jewelry and firearms. Officer Hardee of the Horry County Police Department responded to the break-in and lifted two fingerprints from the broken window. Hardee identified State's Exhibit One and Two as the lift cards of fingerprints taken off the window in the bedroom.

The State called Sergeant Gause as an expert in the field of fingerprint analysis. Gause testified he analyzed State's Exhibit One and Two, checking them through AFIS. He explained how the AFIS machine takes a picture from a latent print which is then downloaded into the computer and sent through AFIS, which searches the database. Gause testified AFIS produces twenty to thirty possible matches, and the operator then has to physically review each potential matching print and compare it with the latent print from the crime scene. Gause identified State's Exhibit Three as the enlarged photograph of State's Exhibit One, one of the prints taken from the scene. State's Exhibit Four was identified by Gause as "the known print" from the database that was found to be a match to the latent print. State's Exhibit Four included an identification number of "SC00454508" in the bottom left-hand corner, which identified the individual to whom it belonged. When they obtain the identification number of a matching

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

print from AFIS, they then identify the person to whom that individual number is assigned. Gause identified State's Exhibit Seven as a "known rolled ten-print." He explained that once a person is arrested, law enforcement rolls the prints on cards and the cards are retained on file in a database through SLED and the FBI. Gause then identified State's Exhibit Seven as Anderson's ten-print card.

At this point, Anderson objected to testimony regarding State's Exhibit Seven, the rolled ten-print card, arguing the rolled prints from the database had not been properly authenticated pursuant to *State v. Rich,* 293 S.C. 172, 359 S.E.2d 281 (1987). The court ruled the ten-print card required authentication. The State indicated it would present evidence of a witness from SLED regarding AFIS. Noting the ten-print card in question originated from Kirkland Correctional Facility, the State proposed, and counsel for Anderson agreed, the witness would identify it as coming from a South Carolina Law Enforcement Agency, apparently to avoid injecting information that it was taken at a correctional facility. However, Anderson maintained the State was required to present testimony regarding the individual who actually took the print, and that information that it was taken by law enforcement would be insufficient for authentication. The court disagreed, ruling the State was not required "to have the officer who actually took [the print]."

The State then presented the testimony of Lieutenant Joseph Means from SLED, who is in charge of the crime information center at SLED and oversees the AFIS system there. Lieutenant Means described SLED's procedures regarding ten-print cards and AFIS. He testified AFIS stores all the digital fingerprint images of every ten-print card in South Carolina. Means explained State's Exhibit Seven was a normal ten-print card, printed from the AFIS system work station. Printed on the card is a state identification number, which Means explained is a unique number assigned to each individual when first arrested that stays unique to the individual no matter how many times that person is arrested. A record is kept of which identification number belongs to which individual. Means testified State's Exhibit Seven bore identification number "South Carolina 00454508," which belonged to Anderson. He then stated this ten-print fingerprint card of

Anderson was taken on April 7, 2004 by a law enforcement agency. He further testified these prints were sent to him and entered into the AFIS by his staff. Means testified he was the custodian of the cards, and that once a fingerprint card is sent into SLED, his office maintains the card in the exact manner in which it arrives. The trial court admitted the rolled ten-print card into evidence over Anderson's objection. Thereafter, Anderson was convicted of first-degree burglary and sentenced to twenty years in prison. This appeal followed.

## STANDARD OF REVIEW

The admission or exclusion of evidence is left to the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion. *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). An abuse of discretion occurs when the decision of the trial court is based upon an error of law or upon factual findings that are without evidentiary support. *Id.*

## LAW/ANALYSIS

Anderson contends the trial court erred in admitting the rolled ten-print card as maintained in AFIS into evidence because the card was not properly authenticated. We disagree.

Properly authenticated fingerprints are admissible against a criminal defendant. *State v. Rich*, 293 S.C. 172, 173, 359 S.E.2d 281, 281 (1987). Further, under the business records exception or the public records exception, admission of police fingerprint records is generally considered not to violate the prohibition against hearsay. *Id. See* S.C.Code Ann. § 19-5-510 (1985) (Providing in regard to business records as evidence, "[a] record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."); Rule 803(8), SCRE (Providing in regard to public records and reports, "[r]ecords, reports, statements, or

data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ..." are not excluded by the hearsay rule.). However, the party offering fingerprints into evidence must comply with the usual requirements of authentication. *Rich,* 293 S.C. at 173, 359 S.E.2d at 281.

In *Rich,* our supreme court cited with approval a North Carolina case, *State v. Foster,* 284 N.C. 259, 200 S.E.2d 782 (1973), in determining whether a fingerprint comparison had been properly authenticated. 293 S.C. at 173, 359 S.E.2d at 282. The court noted in *Foster,* a police officer testified he identified a latent fingerprint with one alleged to be the defendant's which was on a fingerprint card in the master file of the police department. *Id.* There, the prosecution neither attempted to lay a foundation that the fingerprints on the master file card were in fact those of the defendant, nor sought to introduce the master file card. *Id.* In conclusion, the North Carolina Supreme Court held: "[W]ithout evidence as to *when and by whom* the card was made and that the prints on the card were in fact those of this defendant," testimony concerning the fingerprint card from the master file "violated the hearsay rule and should have been excluded." Id. at 174, 359 S.E.2d 282 (emphasis added); *Foster,* 284 N.C. at 273, 200 S.E.2d at 793 (emphasis added).

Guided by the *Foster* holding, the South Carolina Supreme Court reversed Rich's conviction and held a witness should not have been allowed to testify regarding fingerprint data contained in an unauthenticated document. *Rich,* 293 S.C. at 174, 359 S.E.2d at 282. The court found the latent prints which the law enforcement agent had taken himself were properly admitted. *Id.* at 173, 359 S.E.2d at 281. However, testimony regarding the inked impressions used to compare to the latent prints was improper since the inked impressions were not properly authenticated. *Id.* at 174, 359 S.E.2d at 282. As in *Foster,* the State in *Rich* "neither attempted to lay a foundation that the fingerprints on the master file card were in fact those of the defendant, nor sought to introduce the master file card." *Id.* at 173, 359 S.E.2d at 282.

In the present case, Anderson contends a proper interpretation of *Rich* requires the State to present the actual person

who took the fingerprint to testify in order to authenticate the fingerprints from the master card as evidence. We do not believe *Rich* stands for such a strict authentication requirement. Instead, we find the evidence presented by the State, showing when and where the fingerprints were taken and how they were submitted to SLED, and describing the process implemented by law enforcement for taking the fingerprints and maintaining an accurate record of them in AFIS, was sufficient to authenticate the fingerprints as Anderson's known prints. *See* Rule 901(a) and (b)(9), SCRE ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "[T]he following [is an example] of authentication or identification conforming with the requirements of this rule: Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.") Accordingly, we find the trial court properly admitted testimony concerning the ten-print card.

**AFFIRMED.**

ANDERSON and KITTREDGE, JJ., concur.