687 S.E.2d 35

The STATE, Respondent,

v.

**Richard P. ANDERSON, Petitioner.**

No. 26751.

Supreme Court of South Carolina.

Heard Oct. 7, 2009.

Decided Dec. 21, 2009.

122

Appellate Defender LaNelle C. DuRant, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Julie M. Thames, all of Columbia, and Solicitor John Gregory Hembree, of Conway, for Respondent.

Justice BEATTY.

After a jury convicted Richard P. Anderson of first-degree burglary, the trial judge sentenced him to twenty years in prison. Anderson appealed his conviction and sentence to the Court of Appeals. In his appeal, Anderson argued the trial judge erred in admitting into evidence an unauthenticated ten-print card as maintained in the "Automated Fingerprint Identification System" (AFIS). The Court of Appeals affirmed Anderson's conviction and sentence. *State v. Anderson*, 378 S.C. 243, 662 S.E.2d 461 (Ct.App.2008). This Court granted

Anderson's petition for a writ of certiorari to review the decision of the Court of Appeals. We affirm.

## FACTUAL/PROCEDURAL HISTORY

On August 15, 2003, Priscilla Ward returned home after work around 11:10 a.m. to find someone had broken into her home. The intruder had entered the home by breaking a bedroom window. Following the break-in, Ward and her husband discovered several items missing from the home, which included jewelry and firearms.

Stephen Hardee, an officer with the Horry County Police Department, responded to investigate the break-in at the Wards' home. During his investigation, Hardee lifted two fingerprints from the broken window. At trial, Hardee identified two lift cards on which he transferred the latent fingerprints from the crime scene.

In an effort to identify the intruder's fingerprints, the State offered the testimony of Sergeant Jeffrey Gause, an expert in the field of fingerprint analysis. Gause testified he analyzed the latent fingerprints found at the Wards' home by checking them through the AFIS. In describing the AFIS, Gause explained a digital camera takes a picture of the latent print which is downloaded into the computer. The computer then sends the picture through the AFIS, which searches the database for fingerprints with comparable characteristics. As a result of this process, the AFIS produces twenty to thirty possible matches. The operator then has to physically review each print to compare similarities in ridge detail and the pattern of the prints. In using this technology, Gause determined that the latent print found at the Wards' home matched a known print in the database with the identifying number SC00454508. In explaining this identification number, Gause testified that when a person is arrested, the police or jail personnel roll the person's fingerprints onto a ten-print card. These ten-print cards are then retained on file through SLED and the FBI. Gause testified the ten-print card matching the identifying number SC00454508 belonged to Anderson.

Immediately after this statement, Anderson's counsel objected to any evidence concerning Anderson's ten-print card. Counsel argued the rolled ten-print card from the database

was inadmissible given it had not been properly authenticated pursuant to *State v. Rich,* 293 S.C. 172, 359 S.E.2d 281 (1987).[1]

After considering this Court's decision in *Rich,* the trial judge ruled that the State, in order to authenticate the ten-print card, had to present testimony as to when and how it was taken. In response to this ruling, Anderson's counsel asserted the State was also required to establish by whom the fingerprints were taken. The trial judge disagreed with this interpretation of *Rich,* finding the State did not have to show which particular officer took the fingerprints. Instead, the State was only required to present testimony as to which correctional facility [2] took the fingerprints.

Following the judge's ruling, the State offered the testimony of Lieutenant Joseph Means, who is in charge of the crime information center at SLED and oversees the AFIS. Means explained that SLED maintains ten-print cards on every person who is arrested in South Carolina. According to Means, the AFIS stores all the digital fingerprint images of every ten-print card in South Carolina. In order to positively identify each person who has been arrested, a unique state identifying number is assigned to the person at the time of the first arrest. This identifying number remains constant regardless of the number of times the person is arrested. Means testified that the ten-print card with identification number SC00454508 belonged to Anderson and was originated from a law enforcement agency on April 7, 2004. He further stated he was the custodian of the ten-print cards, and when a ten-print card is submitted to SLED it is maintained in the condition in which it arrives. Means emphasized that every fingerprint is unique and that it could not be changed legally.

---

1. *State v. Rich,* 293 S.C. 172, 359 S.E.2d 281 (1987) (holding admission of fingerprint comparison without proper authentication required reversal of conviction given crucial nature of evidence to the State's case).

2. Although Anderson's counsel still maintained his objection to the testimony, he consented to the State's use of the term "law enforcement agency" as opposed to a state "correctional facility" apparently in an effort to avoid any possible inference of a prior conviction. Because any issue regarding the admission of prior bad act evidence was not raised at trial, we express no opinion as to whether this type of evidence was properly admitted.

On cross-examination, Means acknowledged that it was possible for a fingerprint to be altered. He further admitted that he was not present when Anderson's fingerprints were taken for the ten-print card. However, he stated Anderson's ten-print card was sent to him and entered into the AFIS by someone in his office.

Over Anderson's objection, the trial judge admitted into evidence Anderson's ten-print card. Ultimately, the jury convicted Anderson of first-degree burglary. The trial judge sentenced him to twenty years in prison.

On appeal, Anderson challenged his conviction and sentence on the ground the trial judge erred in admitting into evidence the ten-print card as maintained in the AFIS.

The Court of Appeals affirmed, holding the State presented sufficient evidence to authenticate the ten-print card as Anderson's known fingerprints. *State v. Anderson,* 378 S.C. 243, 662 S.E.2d 461 (Ct.App.2008). More specifically, the Court of Appeals stated:

[W]e find the evidence presented by the State, showing when and where the fingerprints were taken and how they were submitted to SLED, and describing the process implemented by law enforcement for taking the fingerprints and maintaining an accurate record of them in AFIS, was sufficient to authenticate the fingerprints as Anderson's known prints.

*Id.* at 249, 662 S.E.2d at 464.

This Court granted Anderson's petition for a writ of certiorari to review the decision of the Court of Appeals.

## DISCUSSION

Anderson argues the Court of Appeals erred in finding the trial judge properly admitted the master fingerprint card with Anderson's known fingerprints. He contends the fingerprint card was inadmissible given the person who actually took the fingerprints did not testify and, thus, the card was not authenticated. Because the fingerprint evidence was the only evidence connecting Anderson to the crime scene, he contends the admission of the fingerprint card constituted reversible error and could not be considered harmless error.

■ "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

The analysis regarding the admissibility of the fingerprint card involves a two-prong approach. The initial question is whether the fingerprint card was testimonial in nature and, if so, fell within an exception to the hearsay rule. If a hearsay exception is applicable, then the next consideration in assessing admissibility is authentication.

■ Regarding the first question, Anderson never challenged the admissibility of the fingerprint card on the ground that it constituted inadmissible hearsay. Thus, we confine our analysis solely to a determination of the authenticity of the fingerprint card.[3]

As recognized by the Court of Appeals, the decision in the instant case is governed by an interpretation and application of *State v. Rich*, 293 S.C. 172, 359 S.E.2d 281 (1987).[4]

---

3. Even assuming that Anderson raised a hearsay challenge, such an argument would be without merit. In *Rich*, this Court definitively held that police fingerprint cards do not violate the prohibition against hearsay given they fall within the business records exception or the public records exception. *Rich*, 293 S.C. at 173, 359 S.E.2d at 281. Notably, appellate courts have continued to recognize this principle and have emphasized that fingerprint cards are not "testimonial" and, thus, do not violate the rule in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See *United States v. Thornton*, 209 Fed.Appx. 297, 299 (4th Cir.2006) (relying on decisions of the Fifth, Sixth, and Ninth Circuits and concluding that fingerprint cards are not "testimonial," and that the admission of such business or public records does not violate the rule in *Crawford* ).

4. In his brief, Anderson relies on this Court's decision in *State v. Cribb*, 310 S.C. 518, 426 S.E.2d 306 (1992). In *Cribb*, this Court reversed a felony driving under the influence (DUI) conviction on the ground the State failed to establish the chain of custody regarding the blood sample at issue given no testimony was provided as to the identity of the persons handling the blood sample. Because the instant case does not involve an issue regarding the chain of custody of a fungible item, we find *Cribb* is inapposite.

■   In *Rich*, the defendant was convicted of second-degree burglary, grand larceny, and failure to stop for a blue light stemming from a break-in at a pharmacy.   At trial, the SLED agent who lifted the latent fingerprints at the crime scene testified regarding his comparison of the these fingerprints with the "inked impressions" of a set of fingerprints on file. *Id.* at 173, 359 S.E.2d at 281.   Over the objection of Rich, the trial judge admitted the testimony.

On appeal, Rich contended the inked impressions were erroneously admitted into evidence because the State failed to lay the proper foundation.   *Id.* This Court agreed with Rich and reversed his convictions and sentences.

Initially, this Court recognized the admission of police fingerprint records is generally considered not to violate the prohibition against hearsay, either under the public records exception [5] or the business record exception.[6]   *Id.* at 173, 359 S.E.2d at 281.   We, however, emphasized that the proponent of the evidence must still comply with authentication requirements.   *Id.*

Given the State neither attempted to lay a foundation that the fingerprints on the master file card were in fact those of Rich, nor sought to introduce the master file card, this Court found the police fingerprint records should have been excluded from evidence.   *Id.* at 173, 359 S.E.2d at 282.   We explained that the testimony regarding the police fingerprint records was inadmissible " 'without evidence as to when and by whom the card was made and that the prints on the card were in fact those of [the] defendant.' " *Id.* at 174, 359 S.E.2d at 282 (quoting *State v. Foster,* 284 N.C. 259, 200 S.E.2d 782, 793 (1973)).

Because the SLED agent should not have been allowed to testify about data contained in an unauthenticated document, which was crucial to the State's case, we found the admission of the evidence constituted reversible error.   *Id.* at 174, 359 S.E.2d at 282.

---

5.   Rule 803(8), SCRE.

6.   Rule 803(6), SCRE;   see S.C.Code Ann. § 19–5–510 (1985) (providing for evidence which falls within the "Uniform Business Records as Evidence Act").

The facts in Anderson's case provided the Court of Appeals an opportunity to interpret and apply this Court's decision in *Rich*. As will be discussed, we find the Court of Appeals correctly held the State presented sufficient evidence to authenticate the ten-print card.

As discussed by the Court of Appeals, *Rich* does not establish an authentication requirement that necessitates the testimony of the actual person who took the fingerprints on the master fingerprint card. Instead, it merely requires " 'evidence as to *when and by whom* the card was made and that the prints on the card were in fact those of this defendant.' " *Anderson*, 378 S.C. at 248, 662 S.E.2d at 464 (quoting *Rich*, 293 S.C. at 174, 359 S.E.2d at 282).

Here, through the testimony of Gause and Means, the State provided evidence that: Anderson's known ten-print card was taken at a correctional facility on April 7, 2004; it was submitted to SLED; it was maintained in the condition in which it arrived; and it was stored in the AFIS. Thus, we agree with the Court of Appeals that the State satisfied its burden of authentication under *Rich*. Additionally, we find the instant case is readily distinguishable from *Rich* given the State introduced into evidence Anderson's known fingerprint card and provided testimony which substantiated the process used in obtaining and maintaining this fingerprint card.

Because this Court decided *Rich* prior to our state's adoption of the Rules of Evidence,[7] we believe it is necessary to supplement the analysis in *Rich* with an application of the pertinent Rules of Evidence as well as subsequent appellate decisions. Given the significance this Court has placed on the Rules of Evidence, we take this opportunity to clarify our decision in *Rich*.

In terms of initial admissibility,[8] Rule 901(a) provides: "[t]he requirement of authentication or identification as a

---

7. The South Carolina Rules of Evidence became effective on September 3, 1995. Rule 1103(b), SCRE.

8. We use the term "initial" admissibility because this rule only relates to the authentication of evidence. Even if properly authenticated, the evidence must still be assessed for relevance as well as probative versus prejudicial value. Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the

condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), SCRE. Although not exhaustive, Rule 901 further provides examples of authentication or identification which conform with the requirements of the rule. Rule 901(b), SCRE. We find several of these illustrations are applicable in the instant case.

First, subsection four provides that a proponent of physical evidence may satisfy the threshold authentication requirement of Rule 901(a) by "internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Rule 901(b)(4), SCRE. Here, Sergeant Gause, an expert in the field of fingerprint analysis, analyzed the latent fingerprints found at the Wards' home by checking them through the AFIS. Using this technology and comparing the characteristics of the latent fingerprints with those of the known prints, Gause determined that Anderson's known prints matched the latent prints. Gause further explained that the prints on the master fingerprint card were taken at a correctional facility, on a specific date, and assigned a unique state identifying number.

We find this testimony regarding the distinctive characteristics of the ten-print card was sufficient to support a finding that the fingerprint card was properly authenticated. See *State v. Lee*, 577 So.2d 1193, 1196 (La.Ct.App.1991) (finding original fingerprint card was properly authenticated under Rule 901(b)(4) where testimony was offered regarding the signatures on the card, the law enforcement agency where the prints were taken, and the date the prints were taken); *see also United States v. Patterson*, 277 F.3d 709, 713–14 (4th Cir.2002) (holding, pursuant to Federal Rule of Evidence 901(b)(4), government provided sufficient authentication of a Tenprinter image where testimony that one of the fingerprints recorded by the Tenprinter matched the fingerprint recovered from the crime scene evidence); *United States v. Lauder*, 409 F.3d 1254, 1265–66 (10th Cir.2005) (referencing Federal Rule of Evidence 901(b)(4) and finding government presented suffi-

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

cient evidence that fingerprint card generated by the "live-skin" method accurately reflected defendant's fingerprints where evidence was presented that: defendant's known fingerprint was properly recorded; the "live-skin" method functioned properly when it recorded the defendant's print; and the chain of custody was maintained).

■ Second, subsection seven, the public records example, provides for authentication by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." Rule 901(b)(7), SCRE. Here, Lieutenant Means and Sergeant Gause testified that law enforcement takes the fingerprints of every person who is arrested in this state.[9] SLED then receives and maintains these known prints on the ten-print card in the condition in which it arrives. The AFIS stores all of the digital fingerprint images of every ten-print card in South Carolina. We conclude this testimony established the fingerprint card of Anderson constituted a public report or record [10]

---

9. Section 23-3-120 of the South Carolina Code mandates this procedure. S.C.Code Ann. § 23-3-120(B) (Supp.2008) ("A person subjected to a lawful custodial arrest for a state offense must be fingerprinted at the time the person is booked and processed into a jail or detention facility or other location when the taking of fingerprints is required. Fingerprints taken by a law enforcement agency or detention facility pursuant to this section must be submitted to the State Law Enforcement Division's Central Record Repository within three days, excluding weekends and holidays, for the purposes of identifying record subjects and establishing criminal history record information." (emphasis added)).

10. A public record or report under this provision only requires that the document be produced and maintained in a public office. The fact that the general public does not have access to the document, i.e., fingerprint cards, does not negate this method of authentication. See S.C.Code Ann. § 30-4-20(c) (2007) (defining the term "public record" to include "documentary materials regardless of physical form or characteristics prepared ... or retained by a public body"); see also Rule 1005, SCRE ("The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be

given its production was authorized by law to be recorded or filed at SLED. See *State v. DuBray,* 317 Mont. 377, 77 P.3d 247, 259–60 (2003) (concluding, based on Rule 901(b)(7), that known fingerprint card of person that defendant attempted to cast suspicion upon was properly authenticated given it was taken and preserved by law enforcement and, thus, constituted a "public report or record"); Rule 901(b)(7), SCRE, cmt. (citing *Rich* and providing for authentication of police fingerprint records under this subsection); *see also State v. Carruth,* 166 S.W.3d 589, 591 (Mo.Ct.App.2005) (holding AFIS fingerprint card was admissible under business records exception to the hearsay rule where witness, who did not take the actual prints, established the standard procedures used by the jurisdiction to collect and maintain fingerprints and testified regarding her determination that the latent prints and the known prints came from the defendant).

█ Third, as referenced by the Court of Appeals, subsection nine provides for authentication by "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." Rule 901(b)(9), SCRE. The State in this case presented evidence regarding: when and where Anderson's fingerprints were taken; how they were submitted to SLED; the process implemented by law enforcement for taking the fingerprints; and how an accurate record of them was maintained in the AFIS. We hold this testimony satisfied the authentication requirement of Rule 901.

█ Even if the evidence presented by the State did not precisely fit within one of the enumerated examples provided in Rule 901, we find Anderson's known ten-print card was, nevertheless, authenticated under a more generalized approach to Rule 901. The State provided expert testimony which linked the latent fingerprints with Anderson's known prints. Sergeant Gause, who was qualified as an expert in the field of fingerprint analysis, testified regarding the method and technology in which he analyzed the latent fingerprints with the known prints. This testimony included a thorough explanation of how an arrestee's fingerprints are taken,

---

obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.").

stored, and maintained. Using the officially-maintained known fingerprints, Gause opined that the latent print found at the Wards' home matched Anderson's known print in the AFIS database. Thus, this expert testimony was sufficient "to support a finding that the matter in question [was] what [the State] claim[ed]." Rule 901(a), SCRE; see *State v. Foreman*, 288 Conn. 684, 954 A.2d 135, 153–62 (2008) (concluding State established proper foundation for admission of "live-scan" fingerprint card identified as that of defendant under Rule of Evidence 901 where "highly trained" latent fingerprint examiner testified regarding the methodology used to compare known and unknown fingerprints and his conclusion that the print from defendant's finger was a "100 percent match" with the unknown print obtained from the crime scene).

As we interpret Anderson's argument, he is primarily concerned with whether the known fingerprints could have been tampered with or altered in some way. In order to alleviate this concern, Anderson contends that *Rich* should be strictly construed to require the person who actually took his fingerprints to testify regarding the reliability or authenticity of the ten-print card.

To require this type of testimony would create an unrealistic standard and, at times, an insurmountable obstacle for the State. Given the thousands of fingerprints on file with SLED, it would be difficult to locate and procure testimony from the actual person. There may be instances where the person has changed jobs, has relocated out of state, or may be deceased. If the actual person is unavailable for any of these reasons, then the State could never definitively establish the authenticity of a suspect's fingerprint card.

## CONCLUSION

In view of these factors, we find the Court of Appeals correctly interpreted *Rich* as not requiring such a strict authentication requirement. Thus, based on the foregoing, we conclude the State presented sufficient evidence to satisfy the authentication requirements pursuant to *Rich* and, more specifically, Rule 901.

Accordingly, the decision of the Court of Appeals is **AFFIRMED.**

TOAL, C.J., WALLER, PLEICONES, JJ., and Acting Justice JAMES E. MOORE, concur.