**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Anthony E. Adkins, Appellant.

Appellate Case No. 2014-001668

Appeal From Horry County
Paul M. Burch, Circuit Court Judge

Unpublished Opinion No. 2017-UP-295
Heard April 12, 2017 – Filed July 19, 2017

**REVERSED AND REMANDED**

Tristan Michael Shaffer, of Shaffer Law Firm, of Chapin, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia; and Solicitor Jimmy A. Richardson, II, of Conway, for Respondent.

**PER CURIAM:** Anthony E. Adkins was indicted for and convicted of kidnapping and criminal domestic violence of a high and aggravated nature (CDVHAN), for which he received concurrent ten-year sentences. On appeal, Adkins contends the

trial court erred in (1) ruling text messages allegedly sent to him from the victim (Victim) and Victim's sister were inadmissible on authenticity grounds, and (2) failing to qualify a forty-year law enforcement veteran as an expert witness on police and/or crime scene investigation. We reverse and remand for a new trial.

Adkins was arrested and subsequently tried for kidnapping and CDVHAN after Victim appeared at a stranger's home in a battered state and indicated her boyfriend, Adkins, had assaulted her. While acknowledging that Victim had been beaten, Adkins's defense was that he was not her assailant. During the trial, Adkins attempted to present evidence concerning text messages allegedly sent from Victim and Victim's sister to Adkins. Adkins proffered his own testimony, as well as that of an investigator retained by the defense, in support of admission of the text messages. The trial court, however, refused to allow the messages into evidence. On appeal, Adkins contends the trial court erred in ruling the text messages were inadmissible on authenticity grounds when Adkins testified he attributed the phone numbers to Victim and her sister through voice identification, context of the messages, and nude pictures of Victim.

We agree with Adkins that the trial court erred in ruling the text messages were inadmissible on authenticity grounds. First, the State's argument that Rule 901 governs only authenticity and not admissibility is misleading. "The requirement of authentication or identification *as a condition precedent to admissibility* is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), SCRE (emphasis added). Thus, if the evidence is not properly authenticated or identified, it does not meet the requirement for admissibility. Though evidence may be evaluated to determine its admissibility on various different grounds, it still must meet the requirement of authenticity in order to be admissible. *See State v. Anderson*, 386 S.C. 120, 127, 687 S.E.2d 35, 38 (2009) (noting, even though evidence may generally be considered not to violate the prohibition against various rules of evidence, "the proponent of the evidence must still comply with authentication requirements" in order for it to be admissible). Further, a review of the record shows the State vehemently maintained, and the trial court found, the text messages were inadmissible because Adkins failed to present sufficient evidence to authenticate them. Inasmuch as the trial court ruled the text messages were inadmissible on authenticity grounds, no issue was ever reached on whether or not the messages were ultimately admissible or inadmissible on any other basis. Though the State did summarily question the relevance of the text messages and contend they were unduly prejudicial, these

bases for possible inadmissibility were not considered.[1]   Rather, the State chose to focus on the authenticity of the text messages as the basis for inadmissibility.  We decline to hold that the defense was required to address all other potential issues that could possibly arise concerning admissibility when the trial court ruled in favor of the State in determining the text messages were inadmissible on the threshold requirement of authenticity grounds.

Further, we find Adkins met the requirement of authentication by providing "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Rule 901(a), SCRE.  "'[T]he burden to authenticate . . . is not high' and requires only that the proponent 'offer[ ] a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.'"  *Deep Keel, LLC v. Atl. Private Equity Grp., LLC*, 413 S.C. 58, 64-65, 773 S.E.2d 607, 610 (Ct. App. 2015) (alternations in original) (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)).  Adkins, consistent with the requirements of authentication under Rule 901, SCRE, sufficiently established that the text messages in question are what Adkins claimed.  Adkins testified he knew the texts were from Victim's sister based on the context of the messages, the sister's identification of herself, and because the sister had called him from the number from which she had texted him and he recognized her voice.  As to the text messages he purported he received from Victim, Adkins explained he knew the text messages were from her based on (1) the context of the messages— specifically pointing out particular features in the content of the texts, (2) pictures of Victim's body—which he testified he recognized, (3) his identification of the background in the pictures—which Adkins identified as a particular room in the

---

[1] At any rate, we note Adkins did provide a basis for relevance of the messages to the trial court and, after a thorough review of the text messages, we agree with Adkins that they would have been clearly relevant to impeachment of Victim's credibility.  *See* Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 608(c), SCRE ("Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.");  *State v. Jones*, 343 S.C. 562, 570, 541 S.E.2d 813, 817 (2001) ("[Subsection (c)] of Rule 608 preserves South Carolina precedent holding that generally, 'anything having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness may be shown and considered in determining the credit to be accorded his testimony.'"(quoting *State v. Brewington*, 267 S.C. 97, 226 S.E.2d 249 (1976))).

house of Victim's grandmother, and (4) based on his familiarity with Victim's voice—which he heard when Victim called him from the same phone numbers.[2] Because the text messages were authenticated by Adkins, it was not necessary to establish a chain of custody. *See State v. Brockmeyer*, 406 S.C. 324, 352-53, 751 S.E.2d 645, 660 (2013) (noting if the challenged evidence is not fungible, but is unique and readily identifiable, a strict chain of custody is not required for admission into evidence); *id.* at 353, 751 S.E.2d at 660 (holding, under Rule 901, SCRE, "readily identifiable items must merely be authenticated by a showing of 'evidence sufficient to support a finding that the matter in question is what its proponent claims,'" and noting Rule 901, SCRE, "list[s] as acceptable methods of authentication the testimony of a witness with knowledge 'that a matter is what it is claimed to be' and distinctive characteristics, such as '[a]ppearance, contents substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances'" (second alteration in original)); *id.* ("The ultimate goal of chain of custody requirements is simply to ensure that the item is what it is purported to be." (quoting *State v. Hatcher*, 392 S.C. 86, 95, 708 S.E.2d 750, 755 (2011))); *State v. Aragon*, 354 S.C. 334, 336-37, 579 S.E.2d 626, 627 (Ct. App. 2003) (holding establishment of a chain of custody was not necessary since the audiotaped conversation was otherwise authenticated under Rule 901, SCRE); *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982) ("The 'chain of custody' rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence."). Accordingly, we hold Adkins presented sufficient evidence to support authentication of the text messages, and the trial court erred in finding them inadmissible on this basis.

We also find no merit to the State's argument that, even assuming the trial court erred in excluding the text messages, this court should affirm Adkins' convictions because he cannot establish prejudice. Adkins' entire defense at trial was, though Victim was beaten, he did not commit the act. The only evidence the State offered in support of its theory that Adkins was the perpetrator was Victim's testimony and her statements to others that Adkins was responsible. Adkins specifically sought to

---

[2] Though there is no specific provision in Rule 901 concerning text messages, the individual means of authenticating evidence cited in the rule are strictly by way of illustration only, and are not meant to limit authentication to those examples alone. Rule 901(b), SCRE. Notably, Rule 901(b)(4), SCRE—denoted as "Distinctive Characteristics and the Like"—provides authentication may be made through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."

use the text messages to impeach Victim's credibility, which was the central issue in this case. *See* Rule 608(c) ("Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced."). Based on our thorough review of the text messages, we also cannot agree with the State's assertion that Adkins could not be prejudiced by the trial court's determination that the text messages were inadmissible because the text messages were more supportive of the State's case than Adkins's.[3] Further, because the trial court ruled none of the evidence was admissible on authenticity grounds, the question of what particular portions of the document, if any, would ultimately be admissible after consideration of other rules governing admissibility was never reached. Accordingly, it is impossible for this court to discern whether admissible messages would have been more prejudicial to Adkins than helpful to his defense. At any rate, even if we were to assume all of the messages would have been admissible, including those reflecting poorly on Adkins, our review of them in their entirety does not convince us that they would be more prejudicial to Adkins than helpful.[4]

Finally, we disagree with the State's contention that the evidence against Adkins was overwhelming. As noted, there was no question at trial as to whether Victim had been beaten, but only as to who beat her. Evidence that Adkins committed the act emanated solely from Victim. There is no other evidence Adkins was viewed anywhere near Victim in the days before and up to the time she appeared at the

---

[3] As to the specific message stream where Victim purportedly states she will never forgive Adkins for what he did to her, there are accusations of lying and cheating, so it is not clear that Victim was referring to Adkins physically harming her. Although there is a message attributed to Victim stating "beat on someone else with golf club and fist and etc. . . .like u did me," Adkins's immediate response to Victim was "Your psycho."

[4] Though the text messages as a whole do not paint Adkins in a particularly positive light, they are very damaging to Victim's credibility. Not only do they serve to impeach Victim's testimony that she had no further contact with Adkins and demonstrate Victim strongly desired to return to her relationship with Adkins, the text messages from Victim's own sister portray Victim as someone who made up lies, instigated fights between others, cheated on Adkins, and liked being the center of attention. Additionally, the messages from Adkins to Victim's sister include denials that he ever hit Victim, and further give an alternate explanation for her battered condition which did not involve Adkins.

stranger's home. Further, there is absolutely no forensic evidence supporting the various acts allegedly committed by Adkins against Victim in the homes where she claimed they occurred. Rather, the State's case hinged entirely on the credibility of Victim. *See Tappeiner v. State*, 416 S.C. 239, 253, 785 S.E.2d 471, 478 (2016) ("Given the dearth of evidence beyond Victim's assertions, we cannot say evidence of Tappeiner's guilt was overwhelming."). Accordingly, we find the trial court committed reversible error in ruling the text messages were inadmissible on authenticity grounds.[5]

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., and HUFF and THOMAS, JJ., concur.**

---

[5] Based on our reversal of this issue, we need not reach Adkins's contention that the trial court erred in failing to qualify a forty-year law enforcement veteran as an expert on police investigation and/or crime scene investigation. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).